UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOJDEH OMIDI and AURORA TELLERIA, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC., A Delaware corporation, et. al.,<br><br>Defendant. | Case No.:  14cv00857 JAH-BLM<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br>**[Doc. Nos. 22, 25]** |

Pending before the Court are Wal-Mart Stores, Inc.'s motion to dismiss (Doc. No. 22) and Defendant FirstSight Vision Services' motion to dismiss (Doc. No. 25). Plaintiff opposes the motions. After a thorough review of the parties' submissions and for the reasons discussed below, the Court GRANTS Defendants' motions.

## BACKGROUND

Plaintiffs originally filed a class action complaint in Superior Court of the State of California, County of San Diego on November 5, 2013. Defendant Wal-Mart removed the action to federal court on April 9, 2014. Plaintiff filed a First Amended Complaint ("FAC") on January 29, 2016, against Wal-Mart Stores, Inc. and FirstSight Vision Services, Inc. asserting claims for unlawful, fraudulent and unfair business practices in violation of

California's Unlawful Business Practices Law ("UCL"), Business and Professions Code section 17200; violation of California False Advertising Law ("FAL"), California Business and Professions Code section 17500; and violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750.

Defendants Wal-Mart and FirstSight filed separate motions to dismiss the FAC for lack of standing and failure to sufficiently allege facts to state a claim. Plaintiff filed separate oppositions to the motions and Defendants filed separate replies. The motions were set for hearing but were taken under submission without oral argument pursuant to Local Rule 7.1.

## LEGAL STANDARDS

**I. Rule 12(b)(1)**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. The federal court is one of limited jurisdiction. See Gould v. Mutual Life Ins. Co. v. New York, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. See Steel Co. v. Citizens for a Better Environ., 523 U.S. 83, 95 (1998). When considering a Rule12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. See Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. (quoting Thornhill Publishing Co. v. General Telephone & Electronic Corp., 594 F.2d 730, 733 (9th Cir. 1979)). Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

//
//

## II. Rule 12(b)(6)

Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss,

the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Defendant Wal-Mart argues Plaintiffs fail to allege facts establishing harm or causation to support Article III standing and statutory standing, fail to satisfy rule 9(b), fail to allege likelihood of future injury for injunctive relief, and the request for disgorgement is not allowed and must be dismissed.

Defendant FirstSight argues Plaintiffs fail to allege facts establishing injury in fact and causation, fail to adequately allege Defendant engaged in unlawful conduct, fail to allege facts sufficient to seek injunctive relief under the CLRA, and fail to satisfy Rule 9(b)'s pleading requirements.  Defendant FirstSight seeks an order dismissing the action with prejudice.

**I. Standing**

**A. Parties' Arguments**

**1. Defendant Walmart's Motion**

Defendant Wal-Mart argues Plaintiffs do not allege facts establishing injury or causation to support their claims.  In the FAC, Defendant maintains, Plaintiffs assert their optometrists were not independent, and they lost money in the form of the $58 they paid for their exams. Defendant contends the FAC generally alleges optometrists leasing space from Defendant FirstSight are subject to influence and control, but it fails to allege Plaintiffs' doctors were, in fact, influenced and controlled in some way that prevented them from being independent.  Defendant Wal-Mart further contends the FAC does not allege Plaintiffs' doctors performed their exams without exercising their independent medical

judgment or they did something they were not supposed to do or did not do something they were supposed to do, and Plaintiffs never allege the doctors wrongly prescribed treatment options. Defendant argues Plaintiffs do not tie their theory that the business model between Wal-Mart and FirstSight creates the possibility of influence and control over optometrists to their actual experience or any actual injury.

In opposition to Wal-Mart's motion, Plaintiffs argue they have standing to pursue unlawful UCL claims. They maintain they would not have been able to purchase their exams but for Walmart's violations of California law by indirectly entering into landlord-tenant arrangements with optometrists, and even if it could legally maintain optometrists in its stores, Wal-Mart violated California law by asserting control and influence over the optometrists. Plaintiffs further argue they adequately allege economic injury to support standing when they allege Plaintiffs bargained for and were entitled to a healthcare provider who was independent and thus free from conflicts of interest but instead were seen by doctors beholden to Wal-Mart. Plaintiff argues it is sufficient to allege that Plaintiffs would not have purchased the exams but for the deception regarding a material component of the exam.

In reply, Defendant Wal-Mart maintains Plaintiffs concede they needed to obtain eye exams from someone and did not allege they could obtain those exams elsewhere at a lower price. Defendant argues Plaintiffs allege no facts establishing any actual and concrete economic injury. Defendant further argues Plaintiffs concede they would have obtained an exam somewhere, while not alleging that anything was deficient or that they could have paid less, and, therefore, Plaintiffs fail to allege harm or causation, which is fatal to all their claims.

**2. Defendant FirstSights' Motion**

Defendant FirstSight argues Plaintiffs lack standing under Article III, and the UCL and FAL because they fail to allege facts establishing a cognizable injury in fact. Defendant contends Plaintiffs do not allege they failed to receive the benefit of the eye exams they purchased, and do not allege they did not want eye exams, that their eye exams

were in any way deficient or defective, or that their eye exams were not worth the $58 they each paid for the exams. Defendant further contends Plaintiffs do not allege the optometrists they visited were not properly licensed, or that because of the arrangement between FirstSight and Wal-Mart, they paid more for their eye exams.  Defendant argues Plaintiffs do not alleged injury in fact, and, consequently, they lack standing to pursue a UCL or FAL claim.

       Defendant FirstSight further argues even if Plaintiffs' payment of $58 for an eye exam could be construed as an injury, Plaintiffs fail to allege facts establishing a causal connection between the alleged harm and the conduct of which they complain.  Defendant contends the mere allegation that it collects rent from optometrists based upon a percentage of the optometrists' gross revenues does not lend itself to a plausible conclusion that it coerced optometrists to perform a high volume of eye exams. Furthermore, Defendant contends there are no allegations in the FAC that it actually pressured the optometrists into performing more eye exams than performed by other optometrists or that the doctors performed the eye exams in a manner inconsistent with the standard of care or in a rushed or hurried fashion, and were not actually independent or that the optometrists were actually controlled or influenced by Defendant FirstSight.  At best, Defendant argues, Plaintiffs' allegations raise the specter that the lease terms could improperly influence the optometrists.  Defendant also argues Plaintiffs do not allege anywhere in the FAC that it advertised the availability of eye examinations from an independent doctor of optometry at Wal-Mart and thus, have not alleged a causal connection between Defendant FirstSight and any purported misrepresentations about the optometrists that Plaintiffs relied upon.

       In opposition to FirstSight's motion, Plaintiffs argue they adequately allege they suffered an economic injury to support standing.  They maintain they allege the exams were deficient, in that, they bargained for an independent healthcare provider but instead were seen by doctors beholden to Defendants' control.  They further maintain they had a right protected by California law, to be examined by an optometrist who is unfettered by any conflicts of interest and had been led to believe that this is what they would receive by

purchasing an exam. Plaintiffs contend had they known the purportedly independent doctors were under Defendants' control and influence, they would have chosen to purchase an exam from a different healthcare provider and, therefore, have suffered economic injury.

Plaintiffs further argue they adequately allege a casual nexus between their willingness to pay for the exam and Defendant FirstSight's unfair business practices. They maintain the FAC creates a prima facie case that the optometrists were subject to Defendants' indirect control and influence through the master agreement between Wal-Mart and FirstSight in which Wal-Mart gave FirstSight exclusive control over the lease rights by mandating optometrists' rent be based on a percentage of monthly revenues. They contend this gave Defendant a vested interest in the optometrists' exam volume. Plaintiffs further contend the lease provisions provided Defendants control over when the optometrists could see patients, provided Defendant FirstSight with the ability to audit optometrists, and the ability to terminate the lease at any time and for any reason which allowed FirstSight to control fundamental aspects of its tenant-optometrists practices. Additionally, Plaintiffs maintain the FAC expressly alleges Dr. Ho was a tenant of FirstSight/Wal-Mart under the exact same lease described in the FAC and, therefore, was subject to Defendants' control and influence. They further maintain the FAC contains specific allegations from which to infer the veracity of Plaintiffs' assertion that optometrists were operating under the same leases, and thus the same control and influence as every other Wal-Mart tenant-optometrist.

In reply, Defendant FirstSight argues, to establish the requisite economic injury, Plaintiffs are required to allege that the eye exams performed by Doctors Ho or Mendoza were not worth the $58 they paid or that they could have obtained an eye exam elsewhere for less but they failed to do so. As a result, Defendant contends, Plaintiffs do not allege any economic injury. Defendant further contends Plaintiffs also fail to allege the optometrists were, in fact, not independent. Defendant argues Plaintiffs' theory, that lease-terms in a business arrangement between Wal-Mart, FirstSight and optometrists is devoid of facts and speculative. Defendant contends Plaintiffs do not allege any facts in the FAC

that show Defendants actually exercised the kind of control and influence over the tenant-optometrists that the applicable statutes and regulations foreclose. Defendant maintains the California Legislature has endorsed the challenged lease terms in the recent amendments to California Business and Professions Code sections 655 and 2556, which undercuts Plaintiffs' theory of control and influence. Defendant argues because the current statutes endorse Defendants' arrangements, Plaintiffs' claims fail as a matter of law. Defendant further argues Plaintiffs' allegations of control and influence are entirely based on speculation and conjecture, in that the FAC does not explain how these lease terms impeded Dr. Ho's and Dr. Mendoza's independence, or that Defendant FirstSight actually controlled Dr. Ho's and Dr. Mendoza's day-to-day practice. Because Plaintiffs do not adequately allege facts to support a plausible causal connection between any unfair business practice or false advertising and any actual harm they suffered, Defendant FirstSight argues Plaintiffs have not demonstrated standing to bring a UCL or FAL claim.

**B. Analysis**

A federal court's judicial power is limited to "cases" or "controversies." U.S. Const., Art. III § 2. A necessary element of Article III's "case" or "controversy" requirement is that a litigant must have "'standing' to challenge the action sought to be adjudicated in the lawsuit." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1152 (9th Cir. 2000). The "irreducible constitutional minimum" of Article III standing has three elements. LSO, 205 F.3d at 1152. First, the plaintiff must have suffered "an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Second, the plaintiff must show a causal connection between the injury and the conduct complained of; i.e., "the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id. (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)) (alterations in original). Third, it must be

"likely," and not merely "speculative," that the plaintiff's injury will be redressed by a favorable decision. Id. at 561.

Additionally, the UCL, the FAL and the CLRA require a plaintiff allege he or she suffered economic injury to have standing to pursue a claim. See Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 321-22 (2011); see also In re Vioxx Class Cases, 180 Cal.App.4th 116, 129 (2009).

In the FAC, Plaintiffs allege Wal-Mart and FirstSight executed an agreement by which Wal-Mart leases office space immediately adjacent to the optical department in Wal-Mart retail locations throughout California to enable FirstSight to sublease the space to California-licensed optometrists for the purpose of conducting eye exams out of those office locations. FAC ¶ 46. Under the agreement FirstSight charges optometrists a percentage of their gross revenue as rent. Id. ¶ 47. Plaintiffs assert this arrangement allows Wal-Mart to exert indirect control over the optometrists because FirstSight has an incentive to ensure the optometrists perform a high number of eye exams to increase its profits and ensures a steady stream of customers to purchase eyewear. Id. ¶ 49. Plaintiffs also allege FirstSight enters into lease agreements with optometrists which provide Defendants control and influence over the optometrists, including: giving FirstSight the right to terminate the lease at any time with 60 days written notice, and the right to change the office location with just one week's notice; preventing an optometrist from encouraging his or her patients to leave or follow the optometrist to another practice; permitting the optometrists to conduct business using only a telephone line approved by FirstSight; setting forth the days and times the optometrist must see patients; dictating what fees the optometrists are allowed to charge; and precluding optometrists from placing signs or advertisements in her or her leased space without the consent of FirstSight. Id. ¶¶ 52-55. Plaintiffs further allege Defendants exert control over which therapies an optometrists can provide and what referrals they make. Id. ¶ 56. Additionally, Plaintiffs allege optometrists are required to hire a person to staff the reception area when the office is open but, cannot hire another optometrist or staff member without FirstSight's permission. Id. ¶ 57. Plaintiffs assert the

leases required optometrists to turn over patient medical records to FirstSight and mandates the records are owned by FirstSight, and requires optometrists to use FirstSights's practice management system that dictates how to manage the office, how the optometrist collects payments, how the optometrists records patient transactions, and requires optometrists to obtain patient signatures on certain forms, including patient informed consent forms. Id. ¶ 58. They further allege FirstSight has the right to audit the optometrists' records allowing Defendants to assess the optometrists' performance, and those deemed to be below the acceptable threshold are notified of the deficiency and warned the deficiency will result in termination. Id. ¶ 59. Additionally, the FAC alleges FirstSight has the right to inspect the office to determine whether an optometrist is complying with the terms of the lease. Id. ¶ 61. Plaintiffs assert Wal-Mart is consulted before a lease is renewed which confirms Wal-Mart has a significant role in dictating whether an optometrist is terminated or retained. Id. ¶ 60.    Plaintiffs also assert Wal-Mart advertises the availability of eye exams from independent doctors in various media, including signs and displays throughout the Wal-Mart optical department but fails to disclose the optometrists are under Wal-Mart's influence. Id. ¶¶ 65, 71.

The FAC also alleges Plaintiff Omidi visited the optical department at a Wal-Mart store located in San Diego, California after having seen Defendants' advertisements regarding the availability of onsite eye exams from an "Independent Doctor of Optometry" and purchased an eye exam from Dr. Ho for $58. Id. ¶¶ 75, 76. Plaintiffs allege Dr. Ho was a tenant of FirstSight and Wal-Mart, and was, therefore, operating under their control and influence, as to the hours of operation, fees charged, services advertised, therapies offered, drugs prescribed, referrals made, length and scope of exams, staffing office and records maintenance. Id. ¶ 78. They also allege had Defendants not made eye exams available to Omidi at the Wal-Mart location, she would not have purchased the eye exam from the location and she would not have purchased the eye exam had she known they were unlawful and the optometrist was not independent. Id. ¶¶ 81, 82. Plaintiffs assert Omidi lost money in the amount of $58 by paying for an exam from Wal-Mart's tenant-

1  optometrist that she would not have purchased but for Defendants' unlawful business
2  practices and Defendants' misrepresentation. Id. ¶ 83.

3        The FAC further alleges Plaintiff Telleria visited the optical department at a Wal-
4  Mart store located in Chula Vista, California after having seen Defendants' advertisements
5  regarding the availability of onsite eye exams from an "Independent Doctor of Optometry"
6  and she purchased an eye exam from Dr. Mendoza for $58. Id. ¶¶ 84, 85. Plaintiffs further
7  allege Dr. Mendoza was a tenant of FirstSight and Wal-Mart, and was, therefore, operating
8  under their control and influence, as to hours of operation, fees charged, services
9  advertised, therapies offered, drugs prescribed, referrals made, length and scope of exams,
10 staffing and records maintenance. Id. ¶ 87. They also allege had Defendants not made eye
11 exams available to Telleria at the Wal-Mart location, she would not have purchased the eye
12 exam from the location and she would not have purchased the eye exam had she known
13 they were unlawful and the optometrist was not independent. Id. ¶¶ 89, 90, 91. Plaintiffs
14 assert Telleria lost money in the amount of $58 by paying for an exam from Wal-Mart's
15 tenant-optometrist that she would not have purchased but for Defendants' unlawful
16 business practices and Defendants' misrepresentation. Id. ¶ 92.

17       Plaintiffs allege Omidi paid for and received an eye exam from Dr. Ho and Telleria
18 paid for and received an eye exam performed by Dr. Mendoza. They do not allege they
19 did not receive the eye exam they paid for, that they did not need the eye exam or that Dr.
20 Ho and Mendoza would not have performed the eye exam but for any alleged pressure.
21 Even if Plaintiffs allege a concrete non-speculative injury, they fail to sufficiently allege a
22 causal connection between their injuries and Defendants' conduct. There are no allegations
23 that FirstSight pressured Dr. Ho and Dr. Mendoza to perform a large number of eye exams
24 and it is not a reasonable inference that FirstSight did so simply because it had an incentive
25 to ensure tenant-optometrists increased their profits.

26       Furthermore, Plaintiffs does not allege Wal-Mart exerted any control over Dr. Ho or
27 Dr. Mendoza. They do not allege that Wal-Mart was a party to the lease between FirstSight
28 and Dr. Ho or the lease between FirstSight and Dr. Mendoza, and the allegation that a Wal-

Mart employee had a say in whether to renew a lease is not sufficient to suggest Wal-Mart exerted any control of Dr. Ho's practice or Dr. Mendoza's practice, including determining the number of patients they saw or the therapies they employed.

Additionally, Plaintiffs fail to sufficiently allegation Dr. Ho and Dr. Mendoza were not independent because they were tenants of FirstSight. Plaintiffs do not allege FirstSight threatened not to renew Dr. Ho's or Dr. Mendoza's lease, that they not increase their price for eye exams or that they could not provide certain treatment to their patients. While Plaintiffs allege the lease permitted FirstSight to check the optometrists' books to make sure they were meeting quotas, there are no allegations that FirstSight did so in a manner depicting influence or control. The remaining provisions of the lease fail to demonstrate FirstSight pressured or exerted such control over Dr. Ho or Dr. Mendoza that the optometrists were not independent.

The Court finds Plaintiffs fail to demonstrate they suffered an injury as a result of Defendants' conduct. Accordingly, Plaintiff fails to establish subject matter jurisdiction and Defendants' motions to dismiss are GRANTED.

**B. Remaining Grounds for Dismissal**

Because the Court finds it lacks subject matter jurisdiction over the action due to Plaintiff's failure to sufficiently allege injury, it will not address Defendants' remaining grounds for dismissal.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Defendant Wal-Mart's motion to dismiss is **GRANTED**;
2. Defendant FirstSight's motion to dismiss is **GRANTED**;

//

//

3. The complaint is **DISMISSED with prejudice**.[1]

DATED: March 23, 2017

_____
JOHN A. HOUSTON
United States District Judge

---

[1] Defendant FirstSight contends the motion should be dismissed without leave to amend because the FAC is the third attempt by Plaintiff's counsel to state a plausible cause of action based upon the purported business agreement in that they have tested similar allegations in three related cases before this Court and have failed to survive motions to dismiss on successive occasions. The Court agrees.