UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOJDEH OMIDI and AURORA TELLERIA, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES, INC., A Delaware corporation, et. al.,<br><br>Defendant. | Case No.: 14cv00857 JAH-BLM<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS IN PART**<br>**[Doc. Nos. 48, 49]** |

Pending before the Court are Defendant FirstSight Vision Services' motion to dismiss (Doc. No. 48) and Wal-Mart Stores, Inc.'s motion to dismiss (Doc. No. 49). Plaintiffs oppose the motions. After a thorough review of the parties' submissions and for the reasons discussed below, the Court GRANTS Defendants' motions in part.

## BACKGROUND

Plaintiffs originally filed a class action complaint in Superior Court of the State of California, County of San Diego on November 5, 2013. Defendant Wal-Mart removed the action to federal court on April 9, 2014. Plaintiff filed a First Amended Complaint ("FAC") on January 29, 2016, against Wal-Mart Stores, Inc. and FirstSight Vision Services, Inc. asserting claims for unlawful, fraudulent and unfair business practices in violation of
1

California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200; violation of California False Advertising Law ("FAL"), California Business and Professions Code section 17500; and violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750. Defendants filed separate motions to dismiss the complaint which this Court granted. Plaintiffs appealed the order and the Ninth Circuit Court of Appeals vacated the order in part and denied the order in part and remanded the action for further proceedings. Specifically, the court determined Plaintiffs established standing in asserting they would not have purchased an eye exam if they had known the optometrist was not independent. The court also found Plaintiffs failed to establish injury in support of the unlawful prong of the UCL but this Court's dismissal with prejudice was improper. The court vacated the dismissal with prejudice and remanded for dismissal without prejudice. At the hearing spreading the mandate of the Ninth Circuit Court of Appeals, the Court provided Plaintiff thirty days to file an amended complaint.

On October 22, 2018, Plaintiff filed a Second Amended Complaint ("SAC") asserting claims for fraudulent and unfair business practices in violation of the UCL; violation of the FAL; and violation of the CLRA.

Defendants FirstSight and Wal-Mart filed separate motions to dismiss the SAC for failure to sufficiently allege facts to state a claim. Plaintiff filed separate oppositions to the motions and Defendants filed separate replies. The motions were set for hearing but were taken under submission without oral argument pursuant to Local Rule 7.1.

**LEGAL STANDARD**

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead

2

essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir. 2003); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested and matters of which the Court takes judicial notice. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

**DISCUSSION**

Defendant FirstSight argues Plaintiffs fail to allege facts with particularity of any misrepresentations by FirstSight, fail to allege facts to establish standing to seek injunctive relief under the UCL and FAL and cannot plead a plausible claim for relief against FirstSight because the only remedies available under the UCL and FAL are not available here.

Defendant Wal-Mart argues Plaintiffs' non-disclosure theory addressing the allegedly illegal business structure fails, the SAC does not satisfy the pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiffs fail to allege likelihood of future injury to support injunctive relief and Plaintiffs' request for nonrestitutionary disgorgement is not allowed and must be dismissed.

**I. Plaintiffs' Non-disclosure Theory**

Defendant Walmart contends Plaintiffs' attempt to recast their dismissed claim under the "unlawful" prong of the UCL as an omission theory fails. Walmart maintains the Ninth Circuit already determined Plaintiffs do not have standing to assert claims for unlawful violations because they failed to provide a causal connection between the allegedly unlawful conduct and the claimed injury. Walmart argues Plaintiffs' attempt to recast their allegations as a failure to disclose the business structure was illegal theory provides less connection between the allegations and the claimed injury. In response, Plaintiffs argue the Ninth Circuit did not rule Plaintiffs do not have a viable fraud by omission theory as to all their causes of action.

The Ninth Circuit determined this Court properly found Plaintiffs lacked standing to assert the "unlawful" violations claim because they failed to establish how the injury was "fairly traceable to the purported statutory violations rather than the misleading advertisements themselves." Memorandum at 4. The court remanded the matter with instruction that the claim is dismissed without prejudice to provide Plaintiffs an opportunity to amend to sufficiently allege injury. Instead of amending the "unlawful" claim, Plaintiffs set forth the identical allegations to support a failure to disclose the illegal business

4

structure theory. However, the allegations in support of the injury that they suffered as a result of Defendants' purported failure to disclose the illegality of the business arrangement are nearly identical to the "unlawful" allegations of the FAC the Ninth Circuit deemed insufficient. Plaintiffs fail to change or add any allegations to sufficiently demonstrate the required nexus between the injury and Defendants' failure to disclose the allegedly illegal business structure. Accordingly, Plaintiffs fail to establish injury to support this non-disclosure theory and the claim is subject to dismissal.[1]

## II. Alleging Fraud with Particularity

Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under Ninth Circuit case law, Rule 9(b) imposes two distinct requirements on complaints alleging fraud. First, the basic notice requirements of Rule 9(b) require complaints pleading fraud to set forth "the who, what, when, where, and how" of the misconduct charged." Vess v. Ciba-Geigy Corp., U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003); Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997). Second, the rule requires that the complaint "set forth an explanation as to why the statement or omission complained of was false and misleading." Yourish v. California Amplifier, 191 F.3d 983, 993 (9th Cir. 1999).

### A. Parties' Arguments

### 1. Defendant FirstSights' Motion

Defendant FirstSight argues Plaintiffs fail to allege any FirstSight misrepresentation with particularity required by Rule 9(b) and, instead, Plaintiffs impermissibly lump Defendants together. Additionally, FirstSight argues Plaintiffs do not alleged the "who, what, when, where and how" as required by Rule 9(b).

---

[1] Because the failure to disclose the illegal business structure theory is subject to dismissal, the Court will not address additional arguments supporting the theory.

Plaintiffs argue their allegations satisfy Rule 9(b). They contend they allege the fraudulent misrepresentation was "Independent Doctors of Optometry" and Defendant FirstSight, in concert with Defendant WalMart, made the above misrepresentations by posting them on signs and displays throughout the Wal-Mart optical department. Plaintiffs also contend Defendants made the misrepresentations in June and July 2012. Additionally, Plaintiffs maintain they explain, at length, the misrepresentations were false and misleading because Defendants exerted control and influence over fundamental aspects of its tenant-optometrists.

Plaintiffs further argue they allege Defendants committed fraud by omission when they failed to affirmatively inform consumers that the optometrists were under Defendants' control and influence regarding fundamental aspects of their practice. They maintain they also allege FirstSight had a duty to disclose this material information because only Defendants and the optometrists knew the degree to which Defendants asserted control and influence over the tenant-optometrists. Plaintiffs further contend they would not have undergone the exams had they known the truth about the optometrists and reliance is presumed here because the information at issue was material.

In reply, FirstSight argues Plaintiffs fail to specify which Defendant allegedly posted which signs, what alleged misrepresentations were made therein, to whom, and when Plaintiffs saw the alleged misrepresentations. FirstSight contends Plaintiffs failed to allege any fraudulent representations or conduct constituting a fraud by FirstSight as differentiated from Wal-Mart. Additionally, Defendant argues Plaintiffs fail to plead precise dates or a sufficiently narrow range of dates when the signs were posted or supposedly seen by Plaintiffs to permit FirstSight to adequately respond to the allegations.

Defendant FirstSight further argues Plaintiffs' fraud by omission theory fails because FirstSight had no duty of affirmative disclosure to Plaintiffs. FirstSight contends Plaintiffs fail to plead facts to state a fraudulent concealment claim because they do not plead any facts regarding Plaintiffs' relationship with FirstSight that would give rise to any fiduciary-like duties or other duty to disclose. Defendant FirstSight argues Plaintiffs'

conclusory allegation that Defendants concealed material facts regarding Defendants' alleged control and influence over optometrists giving rise to a duty to disclose is unsupported as Plaintiffs cite no facts showing that FirstSight spoke partially on the subject to Plaintiffs, or otherwise interacted with them in any way that could support a valid concealment theory.

### 2. Defendant Walmart's Motion

Defendant Walmart argues the SAC does not allege sufficient facts establishing the "who, when, what, or how" as required by Rule 9(b). Walmart contends Plaintiffs do not state which defendant made the allegedly false representations to Plaintiffs but, instead, asserts only that both Plaintiffs saw Defendants' advertising in various forms. Walmart argues lumping Defendants together does not satisfy Rule 9(b). Additionally, Walmart argues the allegations that Plaintiffs saw Defendants' advertising in various forms in the public domain on prior trips to the store fails to adequately specify when Plaintiffs supposedly saw and relied on any alleged representations.

Walmart further contends the SAC also fails to plead what or how the unidentified advertising was false. Defendant Walmart maintains Plaintiffs allege they saw Defendants' ads in various forms in the public domain but fail to specify where they saw the ads and fail to allege what the ads stated and Plaintiffs do not allege that they saw those signs or displays they allege were present in the Walmart store. In addition, Walmart argues the SAC draws the unsupported conclusory allegation that the statement regarding independence was false without alleging what Plaintiffs believed or concluded regarding the statement "Independent Doctor of Optometry" or how that statement was material to them. Walmart maintains the statutes and regulations animating the claims here prohibit certain relationships between opticians and optometrists but the SAC does not provide any link between Walmart and the Plaintiffs' optometrists. Instead, Walmart contends, Plaintiffs make the conclusory allegation that Walmart, the optician and FirstSight, not an optician, are essentially one and the same which is conclusory and inadequate. Defendant Walmart further contends there are no allegations in the SAC that FirstSight or Walmart

7

pressured the optometrists to perform more eye exams than performed by other optometrists or that the optometrists did perform more eye exams than would another optometrist, or performed the exams in a manner inconsistent with the standard of care.

Plaintiffs argue, in opposition, that they meet the requirements of Rule 9(b). They maintain they allege Defendants committed fraud by posting signs in the optical department noting the doctors practicing therein were "Independent Doctors of Optometry." They further contend they sufficiently identify the speaker when they allege Walmart, either solely or with FirstSight posted signs displayed in the optical department because the collective allegations are used to describe the actions of multiple defendants who engaged in the same conduct. Plaintiffs also maintain they allege Defendants posted the misrepresentation on signs and displays through the optical department in June and July 2012 which provides Defendants sufficient notice of Plaintiffs' claims. Additionally, Plaintiffs maintain the SAC explains how Defendants exerted control and influence over fundamental aspects of its tenant-optometrists' practices and why it was fraudulent to hold out those optometrists as "Independent Doctors of Optometry."

Plaintiffs further argue they satisfied Rule 9(b) as to their failure to disclose claims. Plaintiffs contend they allege Walmart had a duty to disclose material information that Defendants' exerted control and influence over fundamental aspects of the tenant-optometrists' practices because only it, FirstSight, and the optometrists knew the degree to which Defendants asserted control, Walmart knew the optometrists were under its indirect control and influence and Walmart intentionally omitted this fact. Plaintiffs further contend they allege they would not have purchased the eye exams from the optometrists had they known they were provided by optometrists subject to Defendants' control and influence regarding significant aspects of their practice and reliance is presumed here because the information at issue was material.

In reply, Defendant Walmart maintains Plaintiffs' general allegations about the misrepresentations are untethered to Plaintiffs and their specific exams. Walmart contends the section that include the allegations addressing the Plaintiffs only assert that they saw

8

Defendants' advertising in various forms, with no specifics. Walmart also maintains Plaintiffs' argument regarding when they saw the ads misses the point as Plaintiffs are the only ones who know what they saw and when they saw it and alleging they saw the ads at some point during the class period is not sufficient. Walmart argues Plaintiffs cannot base any claim on ads they never saw or relied on, and their allegations assert only that they saw advertising in various forms in the public domain. Walmart contends the allegations of signs stating "Independent Doctor of Optometry" provide no information about the specific ads Plaintiffs claim they saw and relied on. Additionally, Walmart contends Plaintiffs do not explain what they believed or concluded regarding the statement "Independent Doctor of Optometry" or how that statement was material to them and they never allege that any purported conflict of interest existed or impacted how the optometrists provided their examinations or treatment recommendations, or that the services provided were inadequate, nor did Plaintiffs allege that the optometrists they saw were actually controlled or influenced in their practice of optometry by FirstSight or Walmart.

**B. Analysis**

In the SAC, Plaintiffs allege Walmart leases office space to FirstSight and FirstSight subleases the space to California licensed optometrists through individual agreements with the tenant-optometrists designed to allow Defendants to place pressure on tenant-optometrists to do more exams and limit the optometrists' control of various aspects of their practices, including advertising, treatment, referrals, staffing decisions, and patient records. SAC ¶¶ 46, 47, 49, 50-64. They further allege customers were "lured" into Walmart locations by advertisements regarding the availability of eye examinations performed by independent doctors. Id. ¶ 92.1

Plaintiffs allege Plaintiff Omidi visited the optical department of Walmart on or about June 27, 2012 after having seen "Defendants' advertising in various forms in the public domain, including on prior trips to the store regarding the availability of onsite eye exams from an 'Independent Doctor of Optometry.'" Id. ¶¶ 74,75. Based on the representation, Plaintiff believed the doctor was independent and unaware of the control

9

and influence Defendants had over material aspects of the doctor's practice. She alleges the optometrist was under the same lease described previously and subject to Defendants' control. Id. ¶ 77. Additionally, she alleges she would not have paid for or undergone the exam if she known it was not provided by an independent doctor and she lost $58 by paying for the exam. Id. ¶¶ 79, 81.

Plaintiffs also allege Plaintiff Telleria visited the optical department at Walmart on or about July 29, 2012 and paid $58 for an eye exam she believed would be provided by an independent doctor after seeing "Defendants' advertising in various forms in the public domain, including on prior trips to the store regarding the availability of onsite eye exams from an 'Independent Doctor of Optometry.'" Id. ¶¶ 82-84. She alleges the optometrist was under the same lease described previously and subject to Defendants' control. Id. ¶ 85. She alleges she would not have purchased or undergone the exam if she knew the doctor was not independent. Id. ¶ 87.

Plaintiffs also allege Defendants engaged in fraudulent conduct by misrepresenting the doctors were independent and failing to disclose the doctors were under the control and influence of Defendants regarding material aspects of their practices. Id. ¶¶ 98, 99. Additionally, they allege Defendants used language in Walmart's signs and "other publicly available advertising" to lure Plaintiffs and class members. Id. ¶ 101.

Rule 9(b) requires a plaintiff's allegations of fraud "be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir.1993)). Plaintiffs' allegations regarding the use of the lease to exert control over the tenant-optometrists, and their optometrists in particular, sufficiently notify Defendants the alleged misrepresentation was the statements the optometrists were independent and both Plaintiffs specifically allege they relied on the statements. However, Plaintiffs' allegations that they saw Defendants' advertising sometime before their respective visits to the store for their eye exams in June and July

2012 are too imprecise. While Rule 9(b) does not required they provide exact dates. Plaintiffs should narrow the range of dates to a reasonable period of time. Additionally, Plaintiffs' allegations of seeing the ads "in various forms in the public domain" do not allow Defendants to prepare an adequate defense against the allegations.

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.' Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Haskin v. R.J. Reynolds Tobacco Co., 995 F.Supp. 1437, 1439 (M.D.Fla.1998). A plaintiff may use collective allegations to describe the actions of multiple defendants where defendants "are alleged to have engaged in precisely the same conduct." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1184 (9th Cir. 2016). While the allegations provide specifics as to each Defendant's involvement in the allegedly improper business structure, the allegations lack the required specificity as to how the misrepresentations made and when they were made as to either Defendant.

Plaintiffs also allege fraud by omission for failing to disclose the influence and control Defendants had over the optometrists. Under California law, a cause of action for fraudulent concealment requires an allegation that the defendant owed a duty to disclose the concealed fact. Levine v. Blue Shield of California, 189 Cal.App.4th 1117, 1126–1127, 117 Cal.Rptr.3d 262 (2010). "There are four circumstances in which a duty to disclose may arise such that nondisclosure or concealment constitutes actionable fraud: (1) when a fiduciary relationship exists between the parties; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes a partial representation to the plaintiff while suppressing other material facts." LiMandri v. Judkins, 52 Cal.App.4th 326, 336 (1997) (citations omitted). "The first circumstance requires a fiduciary relationship; each of the other three 'presupposes the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise.'"

11

Deteresa v. Am. Broad. Cos., 121 F.3d 460, 467 (9th Cir. 1997) (quoting LiMandri, 52 Cal.App.4th at 3363-7). "Such relationships 'are created by transactions between parties from which a duty to disclose facts material to the transaction arises under certain circumstances.' Examples are 'seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement.'" Id. (quoting LiMandri, 52 Cal.App.4th at 337). Plaintiffs fail to allege facts demonstrating a relationship or transaction with Defendants to support the failure to disclose theory.

Accordingly, Plaintiffs fail to meet the specificity requirements of Rule 9(b) and the motions to dismiss are granted.

### III. Remedies
### A. Injunctive Relief

Both Defendants argue Plaintiffs do not allege a likelihood of future injury to support a request for injunctive relief. Plaintiffs indicate they do not oppose dismissal of their claims for injunctive relief against FirstSight and Walmart. See Doc. Nos. 51 at 10, 52 at 14. As such, the motion to dismiss the claims for injunctive relief is granted.

### B. Restitution/Nonrestitutionary Disgorgement
### 1. Parties' Arguments
### a. FirstSight's Motion

Defendant FirstSight argues Plaintiffs fail to state a valid claim for restitution because they allege that they paid their optometrists for eye exams, and do not allege they paid anything to FirstSight. Defendant maintains a plaintiff may only recover funds it paid to the defendant and the California Supreme Court expressly ruled that the UCL does not permit nonrestitutionary disgorgement.

In opposition, Plaintiffs argue they need not allege they provided any money or property directly to defendant to be entitled to restitution because courts regularly award restitution in cases where the defendant obtains money from the plaintiff through a third party. They further argue liability under the UCL and FAL may be imposed against those who aid and abet the violation and contend the SAC contains allegations of Defendants

12

having engaged in violating and/or aiding and abetting in the scheme. As such, they argue, they sufficiently allege facts allowing them to properly seek restitution from FirstSight.

In reply, FirstSight argues Plaintiffs have not alleged any facts showing that as a result of any FirstSight misrepresentation, Plaintiffs paid the optometrists for eye exams and that such monies were then funneled to FirstSight. At most, FirstSight contends, Plaintiffs conclusorily allege that Defendants and the optometrists had a profitsharing relationship under which optometrists shared profits with FirstSight, which shared profits with Wal-Mart. Additionally, FirstSight argues Plaintiffs attempt to assert a new liability theory under the UCL based on aiding and abetting, but restitution is only available to individuals who have an ownership interest in money paid the defendant.

**b. Walmart's Motion**

Walmart argues Plaintiffs' request for disgorgement is not tied to any amounts Plaintiffs allegedly lost or otherwise had a vested interest in, and nonrestitutionary disgorgement is not allowed under the UCL.

In opposition, Plaintiffs argue the cases cited by Defendant in support of its argument do not categorically prohibit nonrestitutionary disgorgement in every UCL action and both cases expressly acknowledged the concept of nonrestitutionary disgorgement as a valid remedy under the UCL in the right case, namely a class action. Additionally, Plaintiffs argue numerous decisions from the California Court of Appeal have held that nonrestitutionary disgorgement may be an appropriate remedy in a UCL class action. Plaintiffs entreat this Court to follow the California Court of Appeal decisions that have held that nonrestitutionary disgorgement may be an appropriate remedy in a UCL class action.

In reply, Walmart argues Plaintiffs' suggestion that the law is unsettled on whether nonrestitutionary disgorgement is allowed in a class action is incorrect and has been rejected by many courts. Defendant Walmart also argues Plaintiffs misread several cases suggesting they stand for the proposition that nonrestitutionary disgorgement may be allowed in a UCL class action.

13

## 2. Analysis

Pursuant to the statute, remedies for violations of the UCL are limited. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134 (2003). Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 179 (1999). "Restitution is broadly designed 'to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.'" Ewert v. eBay, Inc., 602 F. App'x 357, 359 (9th Cir. 2015) (citing Korea Supply Co., 29 Cal.4th at 1149, 131 Cal.Rptr.2d 29, 63 P.3d 937).

Plaintiffs allege they lost money as a result of Defendants' fraudulent and unfair business activity by paying for the eye exam and they seek restitution of the exam fees they paid. SAC ¶¶ 3.1, 81, 89. They further allege Defendants formed a profit-sharing relationship "under which optometrists shared a significant portion of their profits with FirstSight, which in turned shared a portion of those profits with Wal-Mart." Id. ¶ 90.2. Because Plaintiffs do not allege they paid any money directly to Defendants, FirstSight argues they cannot seek restitution. However, California courts have recognized that "in appropriate circumstances, the plaintiff in a UCL action may obtain restitution from a defendant with whom the plaintiff did not deal directly." Shersher v. Superior Court, 154 Cal.App.4th 634, 640 (2007) (citing Hirsch v. Bank of America, 107 Cal.App.4th 708 (2003)). Defendant FirstSight attempts to distinguish the cases by arguing they involved payments funneled directly to the defendants through their company, subsidiary or supply chain. The distinction is too narrow. When determining the appropriateness of the plaintiff's request for restitution the courts focus on the ownership interest in the monies sought and whether Defendant received benefit from the monies and not how the money was funneled to the defendant. See People ex rel. Harris v. Sarpas, 225 Cal.App.4th 1539, 1558-1562 (2014); Troyk v. Farmers Group, Inc., 171 Cal.App.4th 1305, 1338-1341 (2009); Shersher, 154 Cal.App.4th 638-641. Plaintiffs sufficiently allege an ownership

interest in the money paid for the exam and the benefit Defendants received, and therefore, properly seek restitution.

Despite the limited remedies available under the UCL, Plaintiffs urge this Court to find nonrestitutionary disgorgement available in class actions and rely on California Court of Appeal decisions in support of their argument that nonrestitutionary disgorgement is an available remedy. As noted by Defendants, two of the three cases Plaintiffs rely upon, Juarez v. Arcadia Financial, Ltd., 152 Cal.App.4th 889 (2007); Corbett v. Superior Court, 101 Cal.App.4th 649 (2002), address restitutionary disgorgement. The other case upon which Plaintiffs rely, Alch v. Superior Court, 122 Cal.App.4th 339 (2004), addresses class-wide backpay into a fluid recovery fund, not nonrestitutionary disgorgement. Furthermore, the court in Madrid v. Perot Systems Corp., specifically found "*nonrestitutionary* disgorgement is not an available remedy in a UCL class action." 130 Cal.App.4th 440, 460 (2005) (emphasis in original). Recognizing the UCL as a substantive statute, the class action as a procedural device and fluid recovery as a method for paying out damages, the court in Madrid determined the "use of the class action vehicle to litigate a UCL claim does not expand the substantive remedies available, and the availability of fluid recovery in a UCL class action. . .says nothing about availability of *non* restitutionary disgorgement of profits." Id. at 461 (emphasis in original). Accordingly, Plaintiffs' claim for nonrestitutionary disgorgement is dismissed with prejudice.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Defendant Wal-Mart's motion to dismiss is **GRANTED IN PART**;
2. Defendant FirstSight's motion to dismiss is **GRANTED IN PART**;

//
//
//
//
//

15

3.      Plaintiffs may file an amended complaint addressing the noted deficiencies **on or before April 24, 2020**.

DATED:    March 23, 2020

_____
JOHN A. HOUSTON
United States District Judge